UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRYL REID                                                     CIVIL ACTION

VERSUS                                                          NO. 13-6080

TRANSOCEAN OFFSHORE                      SECTION "I" (2)
DEEPWATER DRILLING, INC.

## ORDER ON MOTION

As ordered, Record Doc. No. 18, defendant, Transocean Offshore Deepwater Drilling, Inc., provided to me for in camera review the documents it has withheld from discovery on the basis of the attorney-client privilege and work product protection. Both parties filed supplemental memoranda, Record Doc. Nos. 24, 28, regarding the deferred portion of defendant's Motion to Quash Subpoena Issued to David Gautreaux c/o Shuman Consulting, Record Doc. No. 16. Having reviewed the materials in camera, IT IS ORDERED that the deferred portion of the motion is GRANTED IN PART AND DENIED IN PART as follows.

Transocean's relevance objections are overruled. The motion is granted as to the following materials listed on its privilege log, which are attorney-client privileged and need not be produced in response to plaintiff's subpoena duces tecum: Nos. 4, 6, 7, 10, 12, 23, 34, 35, 50, 52, 53, 71, 74, 75, 77, 79, 82, 85 and 86.

Four pages located at tab number 56, consisting of an e-mail dated February 29, 2012, from Amy Broussard to Michael Riess and others regarding witness questions and a three-page attachment, appear to be mislocated. The content of these pages is unrelated

to the preceding six pages behind tab number 56. Broussard's e-mail is dated earlier than the preceding six pages, and the four pages from her are not described under number 56 on the privilege log. It appears that these four pages should be located at tab number 35, as the description of the materials at number 35 on the privilege log matches these documents. These four pages are attorney-client privileged and need <u>not</u> be produced.[1]

Document No. 64 would be privileged on its face, except that it has two unidentified addressees, Renee Glidewell and Karen Weiss, both @aon.com.[2] If they are Transocean's representatives, as defined by the federal common law of attorney-client privilege, disclosing confidential communications to them does not abrogate the privilege. If they are third parties, disclosure destroys confidentiality and waives the privilege. The court cannot assume that they are defendant's representatives. Accordingly, IT IS ORDERED that, no later than June 23, 2014, Transocean must file a supplemental memorandum with an affidavit or other evidence regarding whether Glidewell and Weiss are its representatives. Plaintiff may file a supplemental memorandum in response to defendant's memorandum, no later than June 26, 2014. I will then issue a supplemental ruling as to document No. 64, which need not be produced until after that ruling.

---

[1] In addition, it appears that the last page of the four pages behind tab number 48 is mislocated and should be the first page of tab number 49. That page is an e-mail dated March 26, 2012 from Steven Walker to Karen Johnson and others. It is unrelated to the preceding three pages behind tab number 48. The Walker e-mail matches the description of document number 49 on the privilege log, while the first page located behind tab number 49 is only the attachment to the e-mail, not the e-mail itself.

[2] According to the Aon.com website, Aon PLC is a "global provider of risk management, insurance and reinsurance brokerage, and human resources solutions and outsourcing services." http://www.aon.com/about-aon/company-overview.jsp (visited June 13, 2014).

All other correspondence to and from defendant's attorneys are merely transmittal letters, which are not subject to the attorney-client privilege because they contain no confidential communications. "[T]urning documents over to one's lawyer does not automatically cloak those documents in attorney-client privilege" or work product protection. Lyondell Chem. Co. v. Occidental Chem. Corp., 608 F.3d 284, 300 n.57 (5th Cir. 2010) (citing United States v. Robinson, 121 F.3d 971, 975 (5th Cir. 1997)); accord In re Avantel, S.A., 343 F.3d 311, 321 (5th Cir. 2003); In re Allen, 106 F.3d 582, 604 (4th Cir. 1997) (citing Radiant Burners v. Am. Gas Ass'n, 320 F.2d 314, 324 (7th Cir. 1963)); Lee v. Chicago Youth Ctrs., No. 12 C 9245, 2014 WL 2618537, at *4 (N.D. Ill. June 10, 2014); Primetime 24 Joint Venture v. Echostar Comm'cns Corp., No. 98Civ.6738, 2000 WL 97680, at *1-3 (S.D.N.Y. Jan 28, 2000); Johnston v. Dillard Dep't Stores, Inc., 152 F.R.D. 89, 93 (E.D. La. 1993). Transocean cannot shield non-privileged materials from discovery by sending them to its attorney and then claiming the attorney-client privilege or work product protection because the materials are in the attorney's files.

I find that Transocean has not carried its evidentiary burden to show that the remaining withheld documents are work product. Defendant submitted the affidavit of Maria Strickland, its Senior Claims Manager–Risk, who managed Darryl Reid's personal injury claim. She states that Transocean's standard practice is to hire a third-party adjusting service, Shuman Consulting ("Shuman"), to assist it with managing claims by Transocean employees, and that she engaged Shuman as soon as she knew of Reid's injury. Strickland avers that Transocean does not usually hire an attorney to manage

investigations of such claims. She states that she decided to retain an attorney two days after learning of Reid's January 10, 2012 injury because the injury was significant enough to warrant a Medevac flight, he had immediate surgery, the incident involved a piece of rig equipment and she believed that litigation was highly likely. Strickland asserts that, once she retained attorney Michael Riess, he managed the investigation, evaluated the case and provided Transocean with his opinions regarding liability and damages and his recommendations for future handling and settlement. She states that Shuman and Riess worked together "at all times" to manage the claim, its investigation and its evaluation with "the defense of Transocean in mind as litigation appeared a certainty from the inception of the claim." Record Doc. No. 24-1 at ¶ 20.

Work product protection extends to documents and tangible things that are prepared in anticipation of litigation or for trial by or for a party or its representative, Fed. R. Civ. P. 26(b)(3)(A), but does not extend to the underlying relevant facts. Piatkowski v. Abdon Callais Offshore, L.L.C., No. 99-3759, 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000) (citing Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981)); 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024, at 494 (3d ed. 2010). The work product "privilege can apply where litigation is not imminent, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." Udoewa v. Plus4 Credit Union, 457 F. App'x 391, 393 (5th Cir. 2012) (quotation omitted) (emphasis added). "The mere fact that a document is prepared when litigation is foreseeable does not mean the document was prepared in

4

anticipation of litigation . . . ." Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co., 19 F.3d 1432, 1994 WL 58999, at *3 (6th Cir. 1994) (citation omitted). "If the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." Global Oil Tools, Inc. v. Barnhill, No. 12-1507, 2013 WL 1344622, at *6 (E.D. La. Apr. 3, 2013) (citations omitted). A party's subjective anticipation of litigation must have been objectively reasonable. In re Prof'ls Direct Ins. Co., 578 F.3d 432, 439 (6th Cir. 2009); St. James Stevedoring Co., Inc. v. Femco Mach. Co., 173 F.R.D. 431, 434-35 (E.D. La. 1997).

Strickland's conclusory statements and the materials reviewed in camera do not support a finding that reasonable anticipation of litigation was the primary motivating purpose behind creation of the withheld documents. These materials indicate that Transocean's claims management department, like an insurance company, was managing "a more or less routine investigation of a possibly resolvable claim." Piatkowski, 2000 WL 1145825, at *3. "[C]ourts have routinely recognized that the investigation and evaluation of claims is part of the regular, ordinary, and principal business of insurance companies. Thus, even though litigation is pending or may eventually ensue does not cloak such routinely generated documents with work product protection." Id. at *2 (citations omitted). "'Following any industrial accident, it can be expected that designated personnel will conduct investigations, not only out of a concern for future litigation, but also to prevent reoccurrences, to improve safety and efficiency in the facility, and to

5

respond to regulatory obligations.'" Carroll v. Praxair, Inc., No. 2:05-cv-307, 2006 WL 1793656, at *2 (W.D. La. June 28, 2006) (quoting Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992)).

Although retention of counsel is one factor to consider, it is not conclusive of whether defendant reasonably anticipated litigation at that time. The materials reviewed in camera indicate that Reid cooperated with the medical care arranged and monitored by Shuman. There is no indication that Reid threatened to hire an attorney or to litigate his claim at any time. The witnesses whom Shuman interviewed stated that no one else had contacted them to discuss plaintiff's accident. Rather than taking an adversarial posture, Reid sought cash advances from Transocean while he was unable to work, which were granted, and he expressed his desire to return to work, which he did as soon as his doctor released him. It appears that the investigation was conducted in the ordinary course of Transocean's business "to find out everything possible, as soon as possible, after the accident," St. James Stevedoring, 173 F.R.D. at 433 (quotation omitted), and to try to resolve plaintiff's claim.

The documents I reviewed contain very little input from defendant's attorneys, and almost none directly to Shuman, before Reid approached maximum medical improvement and settlement of his claim became a real possibility. Shuman's mere transmittal of documents to Transocean's attorneys does not make them work product. It appears that the attorneys monitored Shuman's handling of the claim, but did not direct the investigation or management of the claim until the time came to try to settle. Riess wrote

a liability and damages opinion on June 28, 2012, and then became more involved in settlement recommendations. Shuman handled settlement negotiations based on Riess's recommendations. Riess finalized the settlement agreement on July 12, 2012.

The documents as a whole do <u>not</u> support Strickland's assertion that Shuman and Riess worked together "at all times" to manage the claim and its investigation. All indications are that Transocean anticipated settlement, rather than litigation. While defendant may have "prudent[ly] . . . anticipate[d] litigation, and beg[u]n preparation prior to the time suit is formally commenced," Wright & Miller § 2024, at 500, that does not mean, and Transocean has not met its burden to show, that the primary motivating purpose for creating the documents was anticipation of litigation.

Accordingly, IT IS ORDERED that the remainder of the deferred part of the motion is denied and that defendant must produce all responsive, non-privileged materials to plaintiff no later than June 30, 2014, with the exception of Document No. 64, which is subject to the order above.

New Orleans, Louisiana, this ___17th___ day of June, 2014.

                            JOSEPH C. WILKINSON, JR.
                            UNITED STATES MAGISTRATE JUDGE