UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DARRYL REID**                                              **CIVIL ACTION**

**VERSUS**                                                        **No. 13-6080**

**TRANSOCEAN OFFSHORE**                        **SECTION I**
**DEEPWATER DRILLING, INC.**

### ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Transocean Offshore Deepwater Drilling, Inc., for summary judgment, to which plaintiff, Darryl Reid, has filed an opposition.[2] For the following reasons, the motion is **DENIED IN PART** and **DISMISSED AS MOOT** in all other respects.

### BACKGROUND

On January 10, 2012, plaintiff suffered an injury aboard the drill ship DISCOVERER CLEAR LEADER while employed as a floorhand by defendant.[3] Plaintiff underwent two surgeries on his left arm before returning to work as a floorhand.[4] Defendant provided plaintiff with two $1,500.00 advances in June 2012,[5] which plaintiff requested to help with various household bills and new tires for his truck.[6] Defendant paid maintenance and voluntary supplemental benefits through

---

[1] R. Doc. No. 31.
[2] R. Doc. No. 37.
[3] R. Doc. No. 31-5, at 1; *see also* Local Rule 56.2.
[4] R. Doc. No. 31-5, at 2.
[5] R. Doc. No. 31-5, at 3.
[6] R. Doc. No. 31-4, at 1, 3.

-1-

June 27, 2012.[7] Defendant also paid all of plaintiff's medical expenses related to the accident through July 11, 2012.[8]

On July 11, 2012, plaintiff returned to shore on a crew change day and contacted David Gauthreaux ("Gauthreaux"), defendant's "point of contact" with respect to plaintiff's claim, to request a third advance.[9] Gauthreaux was employed by Shuman Consulting, an outside adjusting and claims handling firm.[10] Gauthreaux suggested to plaintiff that defendant was interested in discussing a full and final settlement, and plaintiff agreed to discuss settlement with Gauthreaux, whom he met at a Red Lobster restaurant that day.[11] Plaintiff and Gauthreaux ate lunch and negotiated a full and final settlement in the amount of $80,000.[12] After leaving the restaurant, they proceeded to the office of defendant's attorney, Michael Reiss ("Reiss").[13]

Plaintiff was sworn in by a court reporter at Reiss's office, where a settlement conference proceeded.[14] Although the parties disagree as to whether plaintiff understood the substance of the settlement conference and release and as to the substance of certain interactions at Red Lobster, there is no dispute that plaintiff ultimately entered into a putative settlement release agreement at Reiss's office.[15]

According to plaintiff's April 10, 2014 deposition, Gauthreaux told plaintiff on July 11, 2012, at Red Lobster that if he did not settle the claim that day at a number agreeable to defendant,

---

[7]R. Doc. No. 31-5, at 2.
[8]R. Doc. No. 31-5, at 2.
[9]R. Doc. No. 31-5, at 3.
[10]R. Doc. No. 31-5, at 3.
[11]R. Doc. No. 31-5, at 3.
[12]R. Doc. No. 31-5, at 3.
[13]R. Doc. No. 31-5, at 3; R. Doc. No. 31-4, at 15.
[14]R. Doc. No. 24, at 3.
[15]R. Doc. No. 31-4, at 21; R. Doc. No. 31-4, at 24.

defendant would probably tell plaintiff "to go get fucked and get you a lawyer."[16] Plaintiff further testified that Gauthreaux indicated that plaintiff should not start "too high"– at $500,000.00 for, example – and that plaintiff did not want to "scare them off."[17] Plaintiff testified that Gauthreaux knew plaintiff "was in a bad bind" with his bills, and that Gauthreaux stated that defendant would not give plaintiff any more advances and that defendant wanted to settle the case.[18] According to plaintiff, until he was in Reiss's office, with $5,000 in cash in front of him, he was never told that he could hire a lawyer.[19]

## STANDARD OF LAW

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

---

[16]R. Doc. No. 31-6, at 24.
[17]R. Doc. No. 31-6, at 24, 26.
[18]R. Doc. No. 31-6, at 24, 26.
[19]R. Doc. No. 31-6, at 28, 42. Plaintiff testified that before he was sworn in, Reiss "[w]alked to the head of the table and [threw] the envelope down in front of me," and plaintiff could see the cash in the envelope. R. Doc. No. 31-6, at 42. The settlement transcript confirms that a $5,000 cash advance on the $80,000 settlement was given to plaintiff. R. Doc. No. 31-6, at 20-21.

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## ANALYSIS

Defendant seeks summary judgment on its claim for a declaratory judgment as to the validity of the settlement agreement.[20] Defendant additionally seeks summary judgment on its claim that plaintiff breached the settlement contract by filing a lawsuit against defendant asserting claims that had already been settled.[21]

"[T]he burden is upon one who sets up a seaman's release to show that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights." *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 248 (1942); *see also Castillo v.*

---

[20] R. Doc. No. 31-2, at 1.
[21] R. Doc. No. 31-2, at 1.

-4-

*Spiliada Mar. Corp.*, 937 F.2d 240, 244, 246 (5th Cir. 1991) (citing *Garrett*, 317 U.S. at 248)). The Court concludes that genuine issues of material fact preclude summary judgment at this stage.

Defendant generally relies on the transcript of the 2012 settlement conference, at which plaintiff indicated under oath that he was signing the release of his own free will and without coercion or duress.[22] Citing *S.W.S. Erectors, Inc. v. Southwestern Signs*, 72 F.3d 489, 495 (5th Cir. 1996), defendant contends that "the Fifth Circuit makes absolutely clear that a plaintiff cannot create an issue of fact for purposes of a summary judgment motion by contradicting his own prior testimony."[23] But this standard applies to contradiction that occurs "without explanation." *Id.* Subsequent testimony may be used to "clarif[y] . . . by giving greater detail or additional facts not previously provided in the [first] deposition." *Id.*; *see also Albaugh Chemical Corp. v. Occidental Electrochemicals Corp.*, No. 92-1758, 1993 WL 360730, at *3 (5th Cir. 1993) ("The court will not consider [a contradictory] affidavit unless . . . [the affidavit] sufficiently explains the reasons for the contradiction.").

Here, plaintiff's 2014 deposition[24] sets forth an explanation of why he previously testified[25] that he was entering into the settlement without being threatened and of his own free will. In particular, plaintiff's subsequent testimony explains why he answered "no" to a question regarding threats, notwithstanding his allegation that he had been told by Gauthreaux that if he asked for too much money, defendant would tell him "to go get fucked [a]nd to go hire a lawyer."[26] Plaintiff explained that he did not see Gauthreaux's statement as a threat because Gauthreaux did not directly

---

[22] R. Doc. No. 31-4, at 15, 20.
[23] R. Doc. No. 31-2, at 11.
[24] *See* R. Doc. No. 31-6, at 24-28, 32, 41-42, 45-46, 48.
[25] R. Doc. No. 31-4, at 20.
[26] R. Doc. No. 31-7, at 26, 28.

say, "'Look, you sign this or I'm going to frickin' fire your butt,'" although plaintiff did interpret Gauthreaux's statement to indicate that plaintiff would not be allowed to continue working for defendant if he did not settle that day.[27] Plaintiff further indicated that he stated "no" to the threat question because "nobody threatened, I mean, like within an inch of your life. No, nobody did that."[28]

The Court finds that genuine issues of material fact raised by plaintiff's 2014 deposition preclude summary judgment as to the validity of the settlement agreement, rendering defendant's second argument regarding an alleged breach of that agreement moot at this stage. *See also Double J. Marine, LLC v. Nuber*, No. 13-5825, 2013 WL 6502866, at *2 (E.D. La. Dec. 11, 2013) (finding that a genuine issue of material fact was created when a plaintiff's affidavit was inconsistent with a transcript of the settlement meeting); *Petty v. Odyssea Vessels, Inc.*, 115 F. Supp. 2d 768, 771 (S.D. Tex. 2000) ("Plaintiff's . . . inconsistent testimony given while reviewing the settlement documents . . . presents the Court with a fact question that cannot be resolved at this juncture."). Moreover, because the Court concludes that there is a genuine issue of material fact as to whether the settlement was executed freely, without deception or coercion, the Court need not reach plaintiff's contention that a misdiagnosed shoulder injury creates an issue of fact.[29]

**IT IS ORDERED** that the motion is **DENIED IN PART** as to defendant's declaratory judgment claim.

---

[27] R. Doc. No. 31-6, at 28, 32.
[28] R. Doc. No. 31-6, at 32.
[29] R. Doc. No. 37, at 14.

**IT IS FURTHER ORDERED** that the motion is **DISMISSED AS MOOT** in all other respects.

New Orleans, Louisiana, July 11, 2014.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**